IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| WEBER LUKE ALLIANCE, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>STUDIO 1C INC. dba EO USAGE GUIDE dba EO TOOLS; and dba DOES 1-20,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:16-cv-00389<br><br>Judge Clark Waddoups |

## INTRODUCTION

Weber Luke Alliance, LLC (Weber Luke) alleges trademark and copyright claims against Studio 1C. Studio 1C challenges Weber Luke's trademark and state law claims in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative motion for summary judgment.[1] (Dkt. No. 10.) Studio 1C challenges Weber Luke's copyright claims in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (Dkt. No. 12.) The court has carefully considered the memoranda and other materials submitted by the parties, the arguments of counsel, as well as the law and facts relating to the motions. For the reasons stated below, the court GRANTS both the motion for summary judgment, (Dkt. No. 10), and the motion to dismiss, (Dkt. No. 12).

---

[1] Studio 1C moves on the First, Second, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action. The Sixth, Seventh, Eighth and Ninth Causes of Action are state law claims.

[2] The copyright claims are asserted in the Fourth Cause of Action.

**FACTUAL BACKGROUND**

Weber Luke alleges it has commercially promoted, distributed, and sold its Rollerball Make & Take Workshop Kits since May 2014. (Compl. ¶ 6, Dkt. No. 2.) Weber Luke's kits are a collection of printed materials that include recipes for mixing oils, labels for marking oil roller bottle applicators, marketing materials for distributors, and instructions on how to use the kits. (*Id.* at ¶ 14.) The kits are sold by Weber Luke's vendors on websites and at brick and mortar stores. Weber Luke also sells its kits online. (*Id.* at ¶ 19.) The kits do not include the bottle applicators or essential oils. Roller ball (or rollerball) applicators are glass or plastic bottles with a ball at the top that controls the flow of oils when applied and have been used in the essential oil industry for many years. (*Id.* at ¶ 15.) Weber Luke claims it coined the term "Rollerball" to describe and distinguish its kits, and through advertising, promotion, and sale of its goods, has acquired common law trademark rights in the name. (*Id.* at ¶¶ 15-20.)  In addition to claiming a trademark in the term "Rollerball," Weber Luke also claims copyright protection for its artwork, designs, and instructional materials. (*Id.* at ¶¶ 23-24.)

Studio 1C allegedly began selling its "make and take kits" in or about June 2015. (*Id.* at ¶ 10.) Weber Luke claims that Studio 1C copied and distributed Weber Luke's copyrighted artwork, designs, and instructional materials in a manner that creates the likelihood a potential buyer will confuse or misunderstand the source of the goods. (*Id.* at ¶¶ 25, 28.) Specifically, Weber Luke claims that Studio 1C:  (1) uses the same purple/mauve color scheme, (2) uses a dividing bar in the top 1/4 of the display sheet, (3) uses an instruction sheet that is substantially similar to Weber Luke's, (4) uses a table tent display, (5) uses similar quantities of ingredients within the packaging, (6) uses the same size of generic plastic bag, and (7) uses the term

"Rollerball." (*Id.* at ¶¶ 29-35.) Based on the alleged similarities between the products, Weber Luke brings claims for trade dress infringement, trademark infringement, copyright infringement, and other various state law claims. (*Id.* at ¶¶ 36-82.)

I. **Trademark Claims**

A. **Standard of Review**

Studio 1C challenges Weber Luke's trade dress and trademark claims in a motion to dismiss, or in the alternative, a motion for summary judgment. Having considered Studio 1C's motion and supporting evidence and Weber Luke's opposition to the motions and its supporting evidence, the court concludes that the motion on the trademark and trade dress claims is most appropriately considered under the summary judgment standard of review.

Fed. R. Civ. P. 12(d) states that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Furthermore, "[a] court is not required to give notice of its intention to convert a Rule 12(b)(6) motion into a summary judgment motion when the motion was styled in the alternative." *Marquez v. Cable One, Inc.,* 463 F.3d 1118, 1121 (10th Cir. 2006). Moreover, when a plaintiff responds to a motion that raises matters outside the pleading, it has demonstrated it is aware that the motion may be converted to a Rule 56 motion for summary judgment. *Id. See also Scott v. Graphic Communs. Int'l Union, Local 97-B,* 92 Fed Appx. 896, 903 (3d Cir. 2004) (holding that parties are placed on notice that the court may consider a motion to dismiss as a motion for summary judgment if the motion is entitled in the alternative).

Because Studio 1C's motion was entitled alternatively as a motion to dismiss or a motion for summary judgment, the parties have been placed on notice that the court may exercise review

of the motion under a summary judgment standard.  Studio 1C attached exhibits and other evidence not in the pleadings to support the conclusion that Weber Luke's trademark causes of action fail because there is no genuine dispute of material fact. (Dkt. Nos. 10-1 through 10-40.) Weber Luke responded with an opposition supported by declarations and attached exhibits outside the pleadings. (Dkt. Nos. 15, 16, and 17.) All parties were on notice that the court had before it matters outside the pleadings and argued the merits of the motion on that basis. The court is therefore within its discretion to view this motion as one for summary judgment.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the court views "all facts [and evidence] in the light most favorable to the party opposing summary judgment." *S.E.C. v. Smart*, 678 F.3d 850, 856 (10th Cir. 2012).  The movant must prove that no genuine issue of material fact exists for trial.  *See* Fed. R. Civ. P. 56(a); *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  Accordingly, to survive summary judgment, "the nonmoving party must come forward with specific facts showing there is a genuine issue for trial." *S.E.C.*, 678 F.3d at 858.

**B.  Discussion**

Although trademark infringement and trade dress infringement are separate causes of action, both require plaintiff to prove that its allegedly protected mark is inherently distinctive or has acquired distinctiveness through secondary meaning. Because both Weber Luke's trade dress and common law trademark claims fail to satisfy the common and necessary element of secondary meaning, the court analyzes these causes of action together.

The Lanham Act provides trademark protection under two separate sections. First, under § 2 of the Act, 15 U.S.C. § 1052, a party can seek protection of its trademark by registering it

with the United States Patent and Trademark Office. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 209 (2000). Registering the trademark entitles the owner to a presumption that its mark is valid. *Id.* A trademark that is unregistered, however, may still be protectable under § 43(a) of the Lanham Act. 15 U.S.C. § 1125. It is uncontested that Weber Luke does not have a registered trademark. To be entitled to trademark protection, therefore, it must meet the requirements of § 43(a) of the Lanham Act.[3]

For Weber Luke to establish a claim for protection under Section 43(a), it must prove: (1) "[the] identifying mark . . . is inherently distinctive *or* . . . has acquired distinctiveness through secondary meaning;" (2) the mark is nonfunctional; and (3) the competitor's alleged violation of the plaintiff's rights in its mark is likely to cause consumer confusion. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769 (1992); *see also Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 977 (10th Cir. 2002). A claim for common law descriptive trademark infringement also requires the plaintiff to prove the mark is inherently distinctive or has acquired secondary meaning, and that the competitor's alleged violation of the plaintiff's rights in its mark is likely to cause consumer confusion. *Donchez v. Coors Brewing Co.,* 392 F.3d 1211, 1216 (10th Cir. 2004); *see also GTE Corp. v. Williams,* 649 F. Supp. 164, 170 (D. Utah 1986).

Proving that a mark is inherently distinctive or has acquired secondary meaning is often the most difficult element in a trademark claim, as it is here. *See Forney Industries, Inc. v. Daco of Missouri, Inc.* 835 F.3d 1238, 1244 (10th Cir. 2016). Weber Luke has failed to offer evidence

---

[3] Weber Luke filed an *intent-to-use* trademark application; however, the trademark will not become a registered trademark unless Weber Luke can comply with the statutory requirements. These requirements include that "to the best of the verifier's knowledge and belief, no other person has the right to use such mark in commerce either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods of such other person, to cause confusion, or to cause mistake, or to deceive." U.S.C.A. § 1051 (b)(3)(D). Weber Luke cannot prove first use, or exclusive use, of the term "Rollerball" in order for it to become a registered trademark because the term has been used in commerce for at least nine years prior to Weber Luke filing the *intent-to-use* trademark application.

from which the finder of fact could find either that its alleged trademark and trade dress are inherently distinctive, or that its mark has acquired secondary meaning.[4]

### i. Inherently Distinctive

A mark is "inherently distinctive if its intrinsic nature serves to identify a particular source. Such [marks] almost automatically tell a customer that they refer to a brand and immediately signal a brand or a product source." *Sally Beauty Co.,* 304 F.3d at 977. If the mark is not inherently distinctive, it can gain protection only once "it has developed secondary meaning, which occurs when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." *Wal-Mart Stores,* 529 U.S. at 211 (internal quotations omitted).

In analyzing whether inherent distinctiveness has been established, courts have generally adopted the framework laid out in *Abercrombie & Fitch Co. v. Hunting World, Inc.* That framework separates marks into five categories: (1) fanciful, (2) arbitrary, (3) suggestive, (4) descriptive, or (5) generic.[5] 537 F.2d 4, 9 (2d Cir. 1976). A mark fails the requirement for inherent distinctiveness, and is deemed descriptive, if it alerts the consumer of "an immediate idea of the ingredients, qualities, or characteristics of the goods." *Id.* at 11. To be protectable, a descriptive mark must have acquired a secondary meaning. *See Two Pesos,* 505 U.S. at 768.

Weber Luke asserts trademark protection for the word "Rollerball" when used in its Rollerball Make and Take Workshop Kits. Weber Luke admits that roller ball applicators have been used in the essential oil industry for many years, but claims to have coined the term

---

[4] Because Weber Luke's trademark and trade dress claims so clearly fail to satisfy the necessary secondary meaning element, the court need not address the reasons why the claim also fails to satisfy the remaining elements of its claims.

[5] The *Abercrombie & Fitch Co.* court combined arbitrary and fanciful into one category. Other courts, however, have sometimes separated these terms into separate categories.

"Rollerball" to describe and distinguish its Make and Take Workshop Kits that refer to and use rollerballs, although they are not included in or sold as a part of the kits. (Compl. ¶ 15, Dkt. No. 2.) Because the term "Rollerball" describes a bottle with a ball at the top used as a rolling applicator, the mark falls under the category of being descriptive and, thus, to be protectable must have acquired a secondary meaning.

### ii.   Secondary Meaning

A mark acquires a secondary meaning if the words "have been used so long and so exclusively by one producer with reference to his goods or articles that, in that trade and to that branch of the purchasing public, the word or phrase [has] come to mean that the article is his product." *Educ. Dev. Corp. v. Econ. Co.,* 562 F.2d 26, 29-30 (10th Cir. 1977) (internal quotations omitted). "A trademark user establishes secondary meaning by showing that through long and exclusive use in the sale of the user's goods, the mark has become so associated in the public mind with such goods that the mark serves to identify the source of the goods and to distinguish them from those of others. . . . In sum, secondary meaning refers to the capacity of a mark in the relevant consumer marketplace to identify and distinguish a particular business or source." *First Sav. Bank, F.S.B. v. U.S. Bancorp,* 117 F. Supp. 2d 1061, 1070 (D. Kan. 2000) (citing and quoting *First Bank v. First Bank System, Inc.*, 84 F.3d 1040, 1045 (8th Cir. 1996) (other quotation and citation omitted)).

Weber Luke supports its claim that "Rollerball" has acquired secondary meaning with a single conclusory sentence: "By reason of [Weber Luke's] extensive advertising, promotion and sale of its Goods, [Weber Luke's] Mark and Copyright have acquired and now enjoys a distinctiveness and secondary meaning signifying [Weber Luke's] Goods and [Weber Luke] now owns a valuable goodwill, which is symbolized by [Weber Luke's] Mark and Copyright."

(Compl. ¶ 20, Dkt. No. 2.) Weber Luke has come forth with no evidence, or even any detailed facts, to support this conclusory assertion. For Weber Luke's mark to have acquired secondary meaning based on its allegedly extensive advertising, Weber Luke must offer evidence from which the fact finder could find that its use of the term "Rollerball" has been for such a lengthy period and so exclusive that when a consumer hears or sees "Rollerball," the consumer associates the term with Weber Luke. There is no evidence to support a conclusion that Weber Luke has at any time had exclusive use of the term "Rollerball." Indeed, the facts in the record undisputedly support that Weber Luke did not coin the term "Rollerball."

Studio 1C has supported its motion with nearly 700 pages of exhibits showing that Weber Luke was not the first to use the term "Rollerball." Similarly, Weber Luke offers no evidence that it has enjoyed any period of exclusivity in the use of the term. The exhibits show that the term "Rollerball" has been used to refer to roller bottle applicators for at least nine years prior to when Weber Luke claims to have coined the term. (Def's Mot. Summ. J. Ex. A, B; Dkt. No. 10.) For just one of several examples, the cosmetic shop Sephora lists 145 products identified as a "Rollerball." (*Id.* at Ex. B, Attach. 1.) Weber Luke does not offer contrary evidence, nor even contest these facts. As another example, 90% of the references to "#rollerball" on Instagram refer to rollerballs other than those made with Weber Luke's kits. (*Id.* at Ex. B, Attach. 17.)

The term "Rollerball" has long been used throughout the cosmetic industry to describe products that use roller bottle applicators. Weber Luke has not offered evidence from which a fact finder could find it was the first to use the term, or find that Weber Luke's use of the term was so extensive or exclusive that the purchasing public identifies "Rollerball" with Weber Luke as the source of make and take kits. Weber Luke has used the term "Rollerball" in the exact same way as the competitors before Weber Luke used the term, which is to describe their applicator

bottles. Weber Luke has put forth no evidence that its usage of the term "Rollerball" means anything other than the description of the application apparatus in the cosmetic product. Because the term "Rollerball" has been used in the cosmetic industry long before Weber Luke used the term, and because Weber Luke has not branded a new meaning to the term, Weber Luke's claim fails as a matter of law.[6]

Accordingly, the court GRANTS summary judgment in favor of Studio 1C on Weber Luke's trade dress and trademark claims[7] because the term "Rollerball" is descriptive and Weber Luke has failed to establish that it has acquired the necessary element of secondary meaning.

II. **Copyright Claims**

A. **Standard of Review**

Studio 1C challenges Weber Luke's copyright claims in a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court must dismiss any claim that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). Although the court accepts all well-pled allegations of the complaint as true and views the complaint in a light most favorable to the non-moving party, *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1144 (10th Cir. 2013), to survive dismissal under Rule 12(b)(6), plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim

---

[6] When confronted at oral argument with evidence that the term "Rollerball" was used prior to Weber Luke using the term, Weber Luke changed its argument and alleged that it was the first to use the term "Rollerball" in reference to its Make and Take Workshop Kit. The court finds this argument unpersuasive. Under this logic a party could create a product such as a "make and take birthday cake kit" and claim that it now owns trademark rights to the term "birthday cake." Applying a commonly used term to a "kit" does not automatically change the meaning of the term and allow a party to own a trademark to a commonly used word.

[7] First Cause of Action (Infringement of Trademark), Second Cause of Action (False Designation of Origin/Unfair Competition), and Third Cause of Action (Lanham Act—False Advertising).

has facial plausibility when the [pleaded] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Berneike*, 708 F.3d at 1144-45 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### B. Discussion

Weber Luke claims copyright protection in and to the artwork, designs, and instructional materials displayed in Weber Luke's kits. (Compl. ¶¶ 56-61, Dkt. No. 2.) Weber Luke's Rollerball Make and Take Workshop Kits include a sheet entitled "What's Included" that prominently uses a shade of purple/mauve as part of the color scheme, a prominent dividing bar, a list of contents included in the kit, and an instructional manual. Weber Luke claims copyright protection for this sheet and asserts that Studio 1C infringes because its kits also have a "What's Included" sheet that uses a shade of purple/mauve color scheme, a prominent dividing bar, a list of content that is similar, and an almost identical instruction sheet.

To state a claim for copyright infringement, a plaintiff must prove that the copyright is an original work of expression and that the work is copyrightable subject matter. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.* 499 U.S. 340 (1991). Weber Luke's claim for protection fails. First, the purple header and prominent dividing bar do not meet the requirements for an original expression of authorship. And second, the listing of ingredients and the instruction sheet are not copyrightable.

A valid copyright exists only in original works of authorship. 17 U.S.C. § 102(a). The expression for which a plaintiff seeks protection must have at least some minimal degree of creativity. *Feist Publ'ns, Inc.,* 499 U.S. at 358. "The copyright is limited to those aspects of the work—termed expression—that display the stamp of the author's originality." *Harper & Row, Publrs., Inc. v. Nation Enters.,* 471 U.S. 539, 547 (1985). In other words, though a work may be

original and copyrightable, the copyright does not extend to the non-original elements of the work, and the author has no right to prevent others from copying any elements that are not original.

### i. Purple Header and Prominent Dividing Bar

Although Weber Luke seeks protection for its purple header and prominent dividing bar, it does not assert, nor can it, that a purple header and prominent dividing bar meet the requirements for original works of authorship. Originality is a very low standard, but there is nothing original about the color purple or a prominent dividing bar. Moreover, even if the court were to find that the color scheme and dividing bar were protectable, no reasonable fact finder could find that Studio 1C infringed on Weber Luke's copyright. Weber Luke attached to its complaint the "What's Included" sheet for both companies, and it is clear as a matter of law that the sheets look nothing alike. (Compl. Ex. 3, 4; Dkt. No. 2.) Weber Luke uses a purple and white color scheme, while Studio 1C's design uses many different colors, including a shade of purple that looks slightly different from Weber Luke's purple. The color scheme and dividing bar simply fail to meet the requirements to be considered original creative works and the claim for protection must fail.

### ii. "What's Included" Description and Instruction Sheet

Weber Luke seeks protection for the list of contents included in its kits. (Compl. ¶¶ 29-30, Dkt. No. 2.) A list of contents, however, is not protectable in copyright law. *See Harper & Row Pubrs., Inc.,* 471 U.S. at 556. Copyright protects original means of expression, not ideas or facts. Weber Luke can obtain copyright protection only to the extent there is something unique in the way it arranged its "What's Included" list of items. Weber Luke, however, does not assert a

unique arrangement of the items in its kit, nor can it. An uncreative list of items is outside the protection of copyright law.

For the same reason, instructions are generally not protectable under copyright law. *See Feist Publ'ns,* 499 U.S. 340. Instruction sheets are almost always considered facts or processes and are generally not copyrightable. *See* 17 U.S.C. § 102(b). A unique description of a process or system may be copyrightable, "but the underlying process or system itself is not." *Situation Mgmt. Sys., v. ASP Consulting LLC,* 560 F.3d 53, 61 (1st Cir. 2009). Weber Luke's instruction sheet is merely a description of a steps it recommends be taken to have a successful party for the participants to make rollerballs using the materials in the kits. It includes suggestions such as "have all of your supplies on hand before your workshop" and "Hand out One Recipe Sheet to each guest." (Dkt. No. 21, p. 7-8.) There is no apparent element of creativity or originality. It is a list of rather common sense ideas for a successful party using Weber Luke's materials, rollerballs and essential oils. As such it is not protectable as a copyright.

Furthermore, even were the court to find some element of protectable creativity or originality in the instructions, Weber Luke's claim would nevertheless fail. Studio 1C did not copy it. During oral argument, Studio 1C demonstrated the claimed similarities made by Weber Luke in its opposition memorandum between Weber Luke's instruction sheet and Studio 1C's instruction sheet are not supported by the evidence. Weber Luke repeatedly misquotes Studio 1C's instruction sheet, the original of which was attached as an exhibit to Weber Luke's complaint, to argue to the court that there are significant similarities between the instruction sheets when the reality is otherwise. (Opp'n Memo pp. 7-8, Dkt. No. 21.) Weber Luke claimed it did not know how the instructions were changed or by whom. In the end, the similarities or difference make no difference in the analysis. Even if Studio 1C copied the instructions

verbatim, they still lack both creativity and originality. The content of the instruction sheet simply does not meet the requirement to be copyrightable. For the foregoing reasons, Weber Luke's copyright claim fails to state a claim because the complaint fails to identify any qualifying specific works allegedly infringed, and because what is specifically alleged is not copyrightable subject matter. Therefore, its copyright claim must be dismissed.

### III. Claim for Declaratory Judgment

Weber Luke seeks declaratory judgment in its Fifth Cause of Action that its use of the term "Rollerball" does not "infringe or otherwise violate any rights of Studio 1C (if any) in connection with Studio 1C's use of the 'ROLLERBALL' mark." (Compl. ¶¶ 62-63, Dkt. No. 2.) Weber Luke alleges that Studio 1C has filed a notice of opposition to its attempt to register that mark with the U.S. Patent and Trademark Office. Studio 1C moves to dismiss the claim on two grounds: The court is without jurisdiction because Studio 1C has never asserted that Weber Luke infringes Studio 1C's trademark and Weber Luke is not a party to the opposition proceeding, leaving it no basis to ask this court to intervene. (Dkt. No. 10, p. 29.) Weber Luke offers no response, including a failure to show why this court would have jurisdiction. The Fifth Cause of Action is dismissed.

### IV. Remaining State Law Claims

In addition to the federal causes of action, Weber Luke asserts four state law causes of action: Violation of Utah Deceptive Trade Practices Act (Sixth Cause of Action), common law infringement (Seventh Cause of Action), common law unfair competition (Eighth Cause of Action), and intentional interference with economic relations (Ninth Cause of Action). (Dkt. No. 2.) Studio 1C argues that the Sixth and Ninth state causes of action should be dismissed because each is premised on proving Weber Luke's trademark or trade dress claims. Because those

claims fail, Studio 1C asserts that the state law claims must fail as well. (Dkt. No. 10, p. 30.) As to the Seventh and Eighth causes of action, Studio 1C argues that Weber Luke has failed to allege the required elements of those claims and they fail as a matter of law. Weber Luke opposes the motion on the state counts, but misconstrues Studio 1C's arguments as claiming the state claims are preempted by federal copyright law. (Dkt. No. 14, p. 32.) To the contrary, Studio 1C does not argue preemption, but that the failure of the trademark and trade dress claims requires, as a matter of law, that the state law claims fail as well. Weber Luke argues further that the motion should be denied because of "numerous disputed issues of fact." Weber Luke fails, however, to cite, or even reference, any material facts that would bear on these claims. *Id.* Where a party fails to cite supporting evidence in support of its opposition, it is not the proper role of the court to search through the record to make arguments the party itself has failed to make. *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). The court has ruled that the trademark and trade dress claims fail. As a result, the Sixth and Ninth causes of action, which are premised on the success of those claims, must also fail. Moreover, the bare-boned and conclusory assertions made by Weber Luke in support of its remaining state claims fail as a matter of law and summary judgment is granted in favor of Studio C1 dismissing the Sixth, Seventh, Eighth and Ninth causes of action.

## CONCLUSION

For the foregoing reasons, the court GRANTS defendant's Motion for Summary Judgment and GRANTS defendant's Motion to Dismiss (Dkt. Nos. 10, 12.) The Clerk of Court is directed to dismiss this action with prejudice as against Weber Luke Alliance, LLC.

DATED this 8th day of February, 2017.

                                                          BY THE COURT:

                                                          _____

                                                          Clark Waddoups
                                                         United States District Court Judge